THOMAS YEARSLEY, APPELLANT, V. CHARLES BLAKE, ADMINISTRATOR, APPELLEE.

FILED JANUARY 5, 1910. No. 15,884.

1. Depositions, Exceptions to. An exception to a deposition, on the ground of a defect in the notice, cannot be considered unless made in writing, and filed before the commencement of the trial. Code, secs. 389, 390.

2. Evidence examined, and *held* to support the verdict.

APPEAL from the district court for Frontier county: ROBERT C. ORR, JUDGE. *Affirmed.*

*S. R. Smith,* for appellant.

*L. H. Cheney, contra.*

LETTON, J.

This is an action brought to recover from the estate of Baudway Yearsley, deceased, the sum of $838, for board, lodging, care, and medical attendance furnished the deceased, and for the board of deceased's wife and child. The petition alleges that the deceased, while sane, promised and agreed to pay for such service. The answer, in effect, admits the furnishing of the board, and rendition of the attendance and services, but, as to the deceased, alleges

a settlement and payment in full, and, as to the wife and child, alleges that they went to the plaintiff's home upon plaintiff's invitation, and that during their residence there the wife assisted in the household and farm work. The claim having been filed in the probate court and disallowed, upon appeal to the district court issues were made up and the case tried to a jury, resulting in a verdict for the estate, from which plaintiff appeals.

In December, 1901, Baudway Yearsley was an insane person confined in the asylum for the insane at Hastings, Nebraska. His brother, Thomas Yearsley, who lived in Iowa, took the insane man to his home, with the consent of the family, and with the assistance of his aged mother cared for him from December 5, 1901, to March 18, 1903. Baudway's wife and child afterwards went to Iowa and lived with Thomas from February 15, 1902, to March 18, 1903, when, Baudway's mental and physical health having been largely restored, he, with his family, returned to Nebraska, where he afterwards died. There is little dispute as to the facts, except as to the extent of deceased's incapacity during the first six months that he lived at his brother's home in Iowa. The plaintiff's witnesses testify, in substance, that he was confined to his bed for the first five or six months of his stay, that the plaintiff, his mother, and plaintiff's family cared for him, and that he promised to pay all that was owing for the services. On the other hand, Baudway's wife testifies that when she went to Iowa, on the 2d of March, 1902, it was in response to a letter from her niece, who was a member of plaintiff's family, inviting her to come there; that when she arrived her husband was able to come out to the wagon to meet her; that after the first week she occupied the same room with her husband, and that no one sat up with him after that time, and it was unnecessary for any one to do so; that she took care of him most of the time thereafter when he needed care, and that afterwards he helped to do light work out of doors dur-

50

ing the summer. She further testifies that just before
she and her husband left for Nebraska her husband asked
the plaintiff how much he owed him; that the plaintiff
said $100, and that her husband told him that he would
pay him as soon as he got back to Nebraska and settled;
that after they returned she wrote for her husband a let-
ter, inclosing a draft for $100, and sent same to plaintiff;
that in response they received a letter · written by the
niece acknowledging receipt of the $100; that from that
time until her husband's death neither she nor her hus-
band had received any request for additional payment
for the care of the deceased and herself and child while
they were in Iowa. A copy of the letter written by Mrs.
Yearsley, inclosing $100, and an indorsement thereon in
Baudway's handwriting, as follows: "If this is not
enough let me know and I will make it right"—is in the
record. From that time until after Baudway's death,
in July, 1905, no claim was made by the plaintiff for any
further compensation.

The plaintiff complains that the verdict is not sup-
ported by the evidence. While it is clear that valuable
services were performed and sustenance supplied by the
plaintiff, we think the evidence as to a settlement was
sufficient to uphold the verdict of the jury.

As to the objection made to the wife of deceased being
allowed to testify to a conversation had between the de-
ceased and the plaintiff with reference to the amount
claimed by plaintiff, the evidence was admissible as an
admission against interest on the part of plaintiff.
Plaintiff complains that he had no time to meet this tes-
timony without an adjournment of the case, because he
was not present at the trial, but it is not uncommon for
witnesses to testify in a manner unforeseen by the op-
posite party, and the objection was not made upon the
ground of surprise, nor was any request for a continu-
ance made.

Complaint is made as to the giving of instructions, but
no exceptions were taken at the time; and, hence, they

cannot be reviewed. We have examined the errors assigned with reference to the rulings upon other objections to testimony, and think there is no prejudicial error therein.

As to the point that the notice to take depositions was not properly served, this need not be considered, because the alleged defect was known before the trial, but no exceptions were made before its commencement, as required by sections 389 and 390 of the code.

No prejudicial error being found, the judgment of the district court is

AFFIRMED.